court by statute. This claim is a substantial one.

(2) Where a federal court has original jurisdiction because of the claim of infringement of a federally registered trade-mark that is not plainly without substance, a federal court has derivative jurisdiction of related unfair competition counts, regardless of citizenship of the parties or the amount in controversy; the claim of unfair competition here is clearly related to the claim for infringement of the federally registered trade-mark.

(3) The Trade-Mark Act of 1946, 15 U.S.C.A. § 1051 et seq., gives original federal jurisdiction of unfair competition claims affecting federal commerce regardless of any federal registration, and regardless of the citizenship of the parties or the amount in controversy.

(4) In the present case, there is diversity of citizenship and the amount in controversy exclusive of interests and costs exceeds $3,000.00. The amount in controversy is determined by the value to the plaintiff of the good will associated with the trade-mark or trade name.

 A trade-mark registration, being prima facie evidence of ownership of the mark by the registration, and the evidence supporting the prima facie ownership, the name Lane Bryant is the trade name and trade-mark of plaintiff in connection with Maternity Wear.

Trade-mark and trade name rights may be accrued by long and extensive promotion and use thereof in connection with the sale or distribution of goods and merchandise. The plaintiff Lane Bryant has obtained ownership in the name Lane Bryant for Maternity Wear and to the combination of the words "Lane" and "Maternity" in connection with the sale of Maternity Wear.

Since the combination of "Lane" and "Maternity" has come to indicate that maternity clothing with which the combination is used are goods coming from plaintiff, this combination as a trade-mark or trade name is entitled to protection. Such protection includes injunction against the use by a subsequent user of a name or mark that is so similar to the plaintiff's trade name that there is reasonable likelihood of confusion of source such that prospective purchasers or clients are likely to regard the name as indicating the source identified by the name, and consequently to cause future injury to the good will, reputation or business of the plaintiff. The plaintiff is entitled to its injunction against the use by the defendants of Maternalane or any other similar or colorable combination of the two words "Maternity" and "Lane".

It is not a necessary prerequisite to relief in cases of this nature that someone in point of fact has been deceived, or that the plaintiff in point of fact has sustained actual loss of business, injury to good will or damages, or that fraudulent intent of the defendant be shown. Under the statutory federal law of trade-marks, as well as under federal decisions and Missouri decisions, likelihood of confusion is sufficient to support an injunction whether or not actual confusion has already occurred. However, since actual confusion has occurred, such is strong evidence that confusion in the future is likely to continue.

## HALL LABORATORIES, Inc., et al. v. NATIONAL ALUMINATE CORP.

Civ. No. 1192.

United States District Court
D. Delaware.

Jan. 22, 1951.

324

Aaron Finger and Robert H. Richards, Jr., (of Richards, Layton & Finger), of Wilmington, Del., and Walter J. Blenko and James K. Everhart, Jr. (of Blenko, Hoopes, Leonard & Glenn), of Pittsburgh, Pa., for plaintiffs.

Arthur G. Connolly, of Wilmington, Del., John T. Chadwell, Victor P. Kayser and Richard L. Johnston, all of Chicago, Ill., for defendant.

LEAHY, Chief Judge.

Defendant's motion for summary judgment was denied. D.C., 93 F.Supp. 376. It was there suggested if the Fink-Richardson patent and plaintiffs' practices do not correspond with the teachings of the Fresenius text the prayers of the complaint at bar should be denied. Defendant contends that a finding in its favor on this issue will be dispositive of the case.

In addition, defendant repeats its contention that because of the compromise and settlement of the previous litigation, the license agreement entered into between the parties was a part of the settlement and hence plaintiffs are bound to pay royalties; and accordingly, plaintiffs are estopped to contest the validity of the Fink-Richardson patent either directly or indirectly by a subterfuge of alleging eviction. On this basis, defendant argues plaintiffs are estopped to set up as a reason for non-payment of royalties either the Fresenius text or any of the prior art so far mentioned in the record; defendant, therefore, asks for reconsideration of summary judgment in its favor.

I reject reconsideration of defendant's motion for summary judgment and will pass only on the pending motion under Rule 42(b) of the Federal Rules of Civil Procedure, 28 U.S.C.A. Defendant argues in support of its motion that the basis of the present litigation is plaintiffs' claim there has been a change of "circumstances" or a "new situation", created since plaintiffs entered into a license agreement in connection with the settlement and compromise of the prior litigation in this court, by reason of a judicial interpretation placed upon the teachings appearing in an early chemical textbook by a German chemist named Fresenius.[1] The complaint alleges plaintiffs instituted action in the District Court of the United States for the District of Minnesota against Economic Laboratories, Inc., charging infringement of plaintiffs' No. Re. 19,719, in which action Economic Laboratories cited the Fresenius text as having anticipated plaintiffs' patent. This contention was sustained. D.C.Minn., 72 F.Supp. 683. Subsequent to compromise and settlement of the prior action pending in our Delaware court [2] (and the plaintiffs here taking a license from defendant here), the decision of the Minnesota District Court and its findings and conclusions were sustained in entirety;

1. Hereinafter called the "Fresenius text".

2. Buromin Company et al. v. National Aluminate Corp., our CA No. 538.

8 Cir., 169 F.2d 65. Defendant in the case at bar was not a party to that litigation and the Fink-Richardson patent, in suit here, was in no way involved.

However, the gravamen of the present complaint is that as plaintiffs' activities "correspond in all material and substantial respects to the teachings of the Fresenius text as it has been interpreted by the courts in the Economics case", plaintiffs are relieved of their obligations to pay royalties to defendant here because the Fresenius text as so interpreted "alone and in conjunction with the prior patents and/or prior uses recited" anticipated the Fink-Richardson patent.[3]

In my former memorandum, see 93 F.Supp. 376, denying defendant's motion for summary judgment, I suggested plaintiffs' claim for declaratory judgment was based solely upon the Fresenius text as interpreted in the Economics case and indicated that, as plaintiffs-licensees were subject to various estoppels, any evidence relative to prior art would be confined to Fresenius. Summary judgment having been denied, defendant filed its answer and affirmative defenses. As stated, defendant's assumption that plaintiffs' practices corresponded with the prior art was made solely for the purpose of the motion for summary judgment, for in its answer, defendant denies all allegations to the effect that plaintiffs' practices correspond with the teachings of the Fresenius text and denies that the text anticipated the Fink-Richardson patent.

1. Since denial of summary judgment in defendant's favor, I think the issues in the case at bar have become crystallized for inspection: (1) There should be a decision whether plaintiffs' practices and the Fink-Richardson patent correspond with the teachings of the Fresenius text; and (2) for immediate decision, at this time, whether that issue should be tried separately prior to any other issues.

2. Defendant argues its pending motion under Rule 42(b) should be granted because a finding that plaintiffs' practices and the Fink-Richardson patent do not correspond to the teachings of the Fresenius text would dispose of the case. Therefore, it contends, a separate hearing on this issue should be ordered. This action was brought by plaintiff to test the liability of a licensee to pay royalties. In such a situation, it seems to me the traditional doctrine of estoppel, working against the licensee to attack the validity of the patents which are the basis of the license agreement itself, leaves merely a single issue for determination in the case at bar brought about by the quasi-admission made by defendant respecting the Fresenius text in connection with its former motion for summary judgment. Clearly plaintiffs' claim is based solely upon that text, as interpreted in the Economics case. In fact, it is so stated in the complaint, where it is alleged, as a basis of declaratory judgment relief, that there is a "genuine controversy between the parties as to the force and effect of the Fresenius publication; and that plaintiffs are, therefore, in need of a judicial determination *of that controversy.*" (Emphasis supplied). Again it was so stated in the briefs opposing defendant's motion for summary judgment.[4] I so interpreted plaintiffs' position in my former memorandum when I wrote, "plaintiffs here rely *only* on a prior scientific text", and I invited testimony "placing plaintiffs' practices vis-a-vis the Fresenius text and defendant's patent".[5] I then believed and I now conclude: if Fink-Richardson and plaintiffs' practices do not correspond with teachings of Fresenius, then both plaintiffs' contentions (*first,* that their practices do correspond with the teachings of that text, as interpreted in the Economics case, and *second,* that they have been evicted from the benefits of the license agreement [entered into on the compromise and settlement of the prior

3. The prior uses are precisely the same prior art patents and uses cited in the previous litigation in this court which resulted in a compromise and settlement.

4. Plaintiffs "rely here upon a prior scientific text". Plaintiffs reaffirmed this po-

sition when they contended they had been evicted "by reason of the final decision in the Economics case".

5. 93 F.Supp. 376 at pages 379 and 380.

suit in the Delaware court] by reason of the judicial interpretation of the Fresenius text made by the Court of Appeals in the Economics case) are disposed of.

At argument on defendant's present motion, however, plaintiffs appeared to shift their position by making reference to and utilizing the affidavit of an expert (Dr. George W. Morey), dealing with two patents (Judson and Burk);[6] and attempted to draw our present attention to a reconsideration of those patents in anticipation of Fink-Richardson. But, plaintiffs, I think, should not be permitted to forget the prior litigation between the parties in this court. It was compromised and settled upon plaintiffs agreeing to and executing a license agreement—which they now seek to avoid—with full knowledge of the matters referred to in Dr. Morey's affidavit. In fact, from the record before me, plaintiffs, prior to the compromise and settlement and the license agreement, had obtained the opinion of Dr. Morey concerning the interpretation of the Judson patent, for example, and plaintiffs had full knowledge of both Judson and Burk for many years prior to 1945 when the former litigation was settled. In addition to Judson and Burk, all the other prior art cited in the complaint in the case at bar had already been cited in the first case. Manifestly the primary purpose and effect of the compromise and settlement was to put at rest all issues raised by such prior art. Plaintiffs should not be permitted to retry in another round of litigation all of those issues which they had raised in their prior declaratory judgment action. Under the circumstances, there should be some form of finality to such a settlement of liability in a patent case.

■■ 3. In the first stage of this case, I was hesitant to dispose of the matter on a mere motion for summary judgment without trial in the face of the allegation of plaintiffs that Fresenius exactly corresponds with plaintiffs' practices. For one thing, I observed that particular issue was not raised in the prior litigation in this court. But, this does not mean plaintiffs should be permitted to relitigate the whole of the prior art alleged in the former case. My beliefs based on a former opinion,[7] that there has been survival of the doctrine of estoppel against a patent licensee to contest validity of the licensed patent, which question was under shadow by reason of Formica,[8] Marcalus,[9] and Casco,[10] was, of course, definitely resolved by the Supreme Court in Automatic Radio Mfg. Co., Inc., v. Hazeltine Research, Inc., 339 U.S. 827, 70 S.Ct. 894. There, in 1950, was expressed a reaffirmation of the continued existence of the traditional doctrine of estoppel against a licensee from attacking validity of the subject matter of the license agreement, where, of course, there is no suggestion of misuse of the patents in any antitrust sense. And, I am merely relaxing the application of that doctrine only to the extent that Fresenius has been permitted to creep into the litigation in an odd fashion. At the moment, I have before me defendant's motion under Rule 42(b) for advance and separate trial on the single issue relative to Fresenius. If it so develops on this issue the decision is in favor of plaintiffs, then the parties can proceed on any other issues which could be said to remain, and which the court will decide could remain. If the decision on this issue is in favor of defendant, this would seem to end the cause in this court. Plaintiffs charge here that this is "piecemeal litigation". But the court has discretion under Rule 42(b) to permit "piecemeal litigation" in this or in any other case where it is consonant with justice and especially where the procedural equities of the litigation, so far, appear to call for such an approach.

An order may be submitted granting defendant's motion under Rule 42(b).

6. These were formerly cited by plaintiffs in the prior litigation in this court.

7. Atlas Imperial Diesel Engine Co. v. Lanova Corp., D.C.Del., 79 F.Supp. 1002.

8. Westinghouse Electric & Mfg. Co. v. Formica Insulation Co., 266 U.S. 342, 45 S. Ct. 117, 69 L.Ed. 316.

9. Scott Paper Co. v. Marcalus Mfg. Co., Inc., et al., 326 U.S. 249, 66 S.Ct. 101, 90 L.Ed. 47.

10. Casco Products Corp. v. Sinko Tool & Mfg. Co., 7 Cir., 116 F.2d 119.